J-S28018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF Z.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1098 EDA 2021 |

Appeal from the Decree Entered April 8, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2020-A0115

BEFORE: BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.: Filed: December 23, 2021

C.S. ("Mother") appeals from the Decree entered on April 8, 2021, by the Court of Common Pleas of Montgomery County, involuntarily terminating her parental rights with respect to her son, Z.S. ("Child"), born in July 2016.[1] Because the record supports the decision of the orphan's court, we affirm the Decree.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the Orphans' Court's opinion and the certified record. In May 2017, the Montgomery County Office of Children and Youth ("OCY") began providing services to this family

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Orphans' Court also terminated the parental rights of Child's unknown father. No unknown father appealed the termination of his parental rights or otherwise participated in this appeal.

due to the "runaway behaviors" of Child's older sister, M., who is not involved in this appeal. *See* Exhibit OCY-1 (Juvenile Court Record); Exhibit OCY-10 (Case Timeline). OCY later received referrals in January 2018, which alleged substance abuse by Mother. OCY conducted an unannounced visit at Mother's home on February 2, 2018, and Mother acknowledged engaging in heroin use. This caused OCY to obtain protective custody of Child and place him in foster care. The Juvenile Court adjudicated Child dependent by order dated February 13, 2018, and entered a dispositional order dated March 20, 2018. Child was eighteen months old when OCY obtained protective custody and has remained in foster care since that time.

OCY subsequently prepared a series of Family Service Plan ("FSP") goals to aid Mother in reunifying with Child. In relevant part, these goals included obtaining stable housing, participating in substance abuse treatment and drug screens, participating in mental health treatment, attending parenting classes, and attending all scheduled visits with Child. Mother struggled to comply with her goals throughout 2018 and early 2019. Mother lacked employment and failed to pay utility bills, resulting in OCY paying bills for her. Mother failed to attend substance abuse treatment, produced positive drug screens for opiates and benzodiazepines, and failed to provide OCY with documentation that she was participating in mental health treatment. OCY attempted to assist Mother by providing her with additional intensive services, but she was noncompliant. Mother also missed approximately half of her scheduled phone calls with Child.

Nonetheless, Mother made sufficient progress toward reunification that Child returned to her care Monday through Friday on August 5, 2019.

Mother's progress ended shortly thereafter, on August 21, 2019, when she produced a positive drug screen for methamphetamines. Mother began receiving only supervised visits with Child, followed by virtual visits due to the COVID-19 pandemic. Mother's attendance at visits was inconsistent, with her attendance at virtual visits being particularly poor. Mother failed to attend twelve out of thirty-three virtual visits scheduled between March 2020 and September 2020. Meanwhile, Mother did not obtain employment or stable housing during Child's dependency and had to search for new housing because her landlord was terminating her lease. She produced positive drug screens for substances including benzodiazepines, morphine, methamphetamines, and benzoylecgonine though the end of 2019 and the beginning of 2020. Mother completed an inpatient substance abuse program during the summer of 2020 but later refused to participate in the recommended outpatient treatment and produced a positive drug screen for marijuana. She also failed to document consistent mental health treatment. In the end, Mother completed parenting classes but otherwise failed to comply with her goals.

On August 26, 2020, when Child was three and one half years old, OCY filed a Petition to terminate Mother's parental rights to Child involuntarily. The Orphans' Court held a hearing on the Petition on January 25, 2021, and March

25, 2021, when Child was approximately four and one-half years old.[2] OCY presented the testimony of independent living coordinator, Sarah Guellar; intensive services specialist, Elizabeth Matthews; Justice Works Youth Care family resource specialist, Elise Torres; psychologist, Stephen Miksic, Ph.D.; Child's foster mother, C.L.; and caseworker, Jessica Wilson. Mother, represented by counsel, testified on her own behalf.

At the conclusion of the testimony, the Orphans' Court announced that it would terminate Mother's parental rights to Child involuntarily. The court entered a Decree memorializing its decision on April 8, 2021, citing 23 Pa.C.S. § 2511(a)(1), (2), (8) and (b). Thereafter, Mother filed a timely Notice of Appeal and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

**ISSUES ON APPEAL**

Mother now raises the following claims for our review:

1. The [Orphans C]ourt erred in finding clear and convincing evidence to terminate [] Mother's parental rights under 23 Pa. C.S. §2511(a)[(]1[)].

2. The [Orphans C]ourt erred in finding clear and convincing evidence to terminate [] Mother's parental rights under 23 Pa. C.S. §2511(a)[(]2[)].

3. The [Orphans' C]ourt erred in finding clear and convincing evidence to terminate [] Mother's parental rights under 23 Pa. C.S. §2511(a)[(]8[)].

---

[2] The court found that there was no conflict between Child's best interests and Child's legal rights. Lara Kash, Esq., represented Child.

4. The [Orphans' C]ourt erred in finding clear and convincing evidence to terminate [] Mother's parental rights under 23 Pa. C.S. §2511(b).

Mother's Brief at 8.

**LEGAL ANALYSIS**

When reviewing a decree involuntarily terminating parental rights, this Court must accept the findings of fact and credibility determinations of the Orphans' Court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the Orphans' Court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the Orphans' Court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

"The [Orphans' C]ourt is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). This Court defers to the Orphans' Court, as it often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only

a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." ***In re Adoption of R.J.S.,*** 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the Orphans' Court to conduct a bifurcated analysis. ***See*** 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), the court will then analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, pursuant to Section 2511(b). The court must examine the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). As this Court has emphasized, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

While the Orphans' Court here found that OCY met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b), we need only agree with the

court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude the Orphans' Court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *reargument denied* (Mar. 10, 2021) (quoting *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015)). We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full

parental responsibilities. *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (quoting *In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011)). At a termination hearing, the Orphans' Court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. *In re S.C.*, *supra* at 1105 (quoting *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010), *reargument denied* (May 28, 2010)).

In this case, Mother contends she has been making "significant strides" to correct the circumstances resulting in Child's placement. Mother's Brief at 9-10. She asserts that she underwent substance abuse treatment, provided negative drug screens, maintained suitable housing, and participated in virtual visits with Child. *Id.* at 9-10, 17-18. Mother insists she would have made even greater progress toward reunification with Child if not for the COVID-19 pandemic and the obstacles it posed. *Id.* at 9-10. She emphasizes that her visits with Child were more consistent when they were in-person and proposes it was "unfair" for OCY to file its termination petition approximately six months after the pandemic started, as she was unable to have in-person visits during nearly that entire six months. *Id*. at 14-16. Mother further emphasizes the testimony of the psychologist, Dr. Miksic, who spoke positively regarding Mother's efforts at maintaining sobriety and reunifying with Child. *Id*. at 16-17.

The Orphans' Court concluded that Mother lacked the capacity to parent Child. Orphans' Court Opinion, 5/24/21, at 13. Importantly, and contrary to Mother's contentions, the court determined Mother failed to comply with her FSP goals and could not provide for Child's most basic needs. *Id.* The court found Mother failed to attend mental health treatment and failed to maintain stable housing. *Id.* at 12. The court also observed Mother made no efforts to obtain employment or to apply for Social Security disability benefits during Child's placement. *Id.*

The Orphans' Court explained its most critical considerations, however, were Mother's failure to meet Child's needs while he was residing in her home Monday through Friday in August 2019 and her failure to attend visits with Child. *Id.* The court quoted its comments on the record at the conclusion of the hearing on March 25, 2021, in which it emphasized these considerations. *Id.* at 12-13. The court noted that Mother had the opportunity to parent Child while he was in her home, but she failed to make him available for daycare, failed to take him to a medical appointment, and simply "couldn't do it." *Id.* at 12 (quoting N.T., 3/25/21, at 76-77). Regarding Mother's failure to attend visits, the court explained, "[i]t is inexcusable to have a child relying upon you just not to show up, and Mom's biggest problem is she lacks the ability to even show up for [Child] when it is needed." *Id.* at 13 (quoting N.T., 3/25/21, at 77).

It is important to add that, while Mother attempts to blame her failures on the COVID-19 pandemic, her progress toward reunification deteriorated starting with a positive drug screen in August 2019, long before the pandemic began. Moreover, Dr. Miksic did not testify as positively regarding Mother as her brief suggests. Dr. Miksic explained he performed psychological parenting evaluations of Mother in August 2019 and December 2020, followed by a "virtual observation" of a visit between Mother and Child in December 2020. N.T., 1/25/21, at 150. While he acknowledged Mother showed improvement over time and had made "tremendous efforts" toward achieving reunification with Child, he explained that her prognosis was "poor" because of her "failed rehabilitation attempts and continuing difficulties with organization of her lifestyle and critical meeting and appointments." *Id.* at 154-55, 159, 162. As a result, Dr. Miksic's testimony belies, rather than supports, Mother's claim.

Having reviewed the record, we conclude it supports the findings of the Orphans' Court that Mother has not provided Child with essential parental care, control, and subsistence necessary for his mental and physical wellbeing, and that Mother is unable to remedy the causes of her parental incapacity, neglect, or refusal any time in the foreseeable future. Thus, Mother is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We further conclude, pursuant to Section 2511(b), that the Orphans' Court properly determined termination of Mother's parental rights would be in

the best interests of Child. With respect to Section 2511(b), the court must consider whether termination of parental rights would best serve Child's developmental, physical, and emotional needs and welfare. *See* 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, *supra* at 1121. The court may equally emphasize the safety needs of the child and consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, *supra* at 103. Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Mother argues she and Child share a significant bond. Mother's Brief at 20. She maintains she lived with Child and was his exclusive caregiver for the early part of his life. *Id.* Mother once again emphasizes the testimony of Dr. Miksic, who opined Child recognizes Mother as "'an important and reinforcing individual in his life[.]'" *Id.* (quoting N.T., 1/25/21, at 162).

The Orphans' Court rejected Mother's argument, finding that Mother and Child share a "weak bond," the severance of which would not be detrimental to Child. Orphans' Court Opinion, 5/24/21, at 14-15. The court observed that Child enjoys seeing Mother but does not suffer any negative impact if Mother fails to attend visits or when his visits with Mother end. *Id.* at 15. The court concluded Child has been out of Mother's care for over three years, and that Mother cannot or will not meet Child's needs. *Id.*

The Orphans' Court further found that Child is happy in his foster home and shares a bond with his foster parents. *Id.* The court emphasized that Child's negative behaviors "are regulated" in the foster home, and that Child's foster parents provide for his developmental, physical, and emotional needs. *Id.* The court concluded termination of Mother's parental rights will provide Child with the benefit of a permanent and stable placement. *Id.*

Finally, we add once again that Dr. Miksic's testimony belies, rather than supports, Mother's claim. While Dr. Miksic testified Mother and Child share a bond, he opined it is a "weak" bond "because they have not spent a significant amount of time together since [Child] was 18 months old with [Mother] in a primary caretaking role[.]" N.T., 1/25/21, at 162. Further, while Dr. Miksic acknowledged that Child recognized Mother as "an important and reinforcing individual in his life," he explained that Child's relationship with Mother "is not of the type of dependent relationship between a child and a parent that would cause him permanent or lasting emotional difficulty if their relationship did not continue." *Id.*

Our review of the record supports the Orphans' Court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Mother's parental rights is in the best interests of Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/21